IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RICHARD W. EDWARDS, #135518, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:10-CV-452-TMH |
| | ) | [WO] |
| WARDEN CUMMINS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Richard W. Edwards ["Edwards"], an indigent state inmate, challenging the adequacy of medical treatment provided to him for a spinal condition during his incarceration at the Kilby Correctional Facility in 2010. Edwards names John Cummins, the warden of Kilby, Correctional Medical Service, the contract medical care provider for the Alabama prison system during the time period relevant to this case, Dr. Michael Robbins, the attending prison physician, and Valencia Lockhart, a Physician Assistant employed at Kilby, as defendants in this cause of action. Edwards seeks declaratory relief and monetary damages for the alleged violations of his constitutional rights.

The defendants filed special reports and relevant supporting evidentiary materials, including affidavits and medical records, addressing Edwards' claims for relief. Pursuant

to the orders entered in this case, the court deems it appropriate to construe the aforementioned reports as motions for summary judgment. *Order of July 7, 2010 - Doc. No. 25*. Thus, this case is now pending on the defendants' motions for summary judgment. Upon consideration of these motions and the evidentiary materials filed in support thereof, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word – genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment." *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities [and medical personnel]. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary

3

judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal

citation omitted).  Consequently, to survive the defendants' properly supported motions for

summary judgment, Edwards is required to produce "sufficient [favorable] evidence" which

would be admissible at trial supporting his claims of constitutional violations.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e).  "If the evidence [on

which the nonmoving party relies] is merely colorable . . . or is not significantly probative

. . . summary judgment may be granted."  *Id*. at 249-50.  "A mere 'scintilla' of evidence

supporting the opposing party's position will not suffice; there must be enough of a showing

that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477

U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573,

1576-77 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise

insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose

a motion for summary judgment.  *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d

1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A

plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence,

are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th

Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond

"his own conclusory allegations" challenging actions of the defendants); *Fullman v.*

*Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory

allegations is not sufficient to oppose summary judgment . . . .").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt

5

as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Edwards fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  Suit Against the Defendants in Their Official Capacities - Absolute Immunity

To the extent Edwards sues the defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.  Warden Cummins

Edwards alleges that defendant Cummins failed to intervene regarding the medical treatment provided to him by health care professionals.  *Complaint - Doc. No. 1* at 4.  The claim made against defendant Cummins entitles Edwards to no relief as

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong.  *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.*, 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen, et al.*, 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

To the extent Edwards seeks relief from defendant Cummins for the treatment provided by prison medical personnel due to his position as warden of Kilby, assuming *arguendo* Cummins exerted some authority over the manner in which those persons responsible for the provision of medical treatment rendered such treatment, the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability] . . . . *Robertson v. Sichel,* 127 U.S. 507, 515–516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public

officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties'). Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949. Thus, liability for medical treatment provided to Edwards could attach to defendant Cummins only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the

alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Edwards, however, has presented no evidence, nor can the court countenance the existence of any evidence, which would create a genuine issue of disputed fact with respect to the claim of deliberate indifference by defendant Cummins. The record is devoid of evidence indicating that Cummins personally participated in or had any involvement, direct or otherwise, with the medical treatment provided to Edwards during his confinement at Kilby; rather, it is undisputed that Cummins did not participate in the provision of treatment to Edwards. The evidentiary materials before the court demonstrate that medical personnel made all decisions relative to the course of treatment provided to Edwards and that they provided treatment to Edwards in accordance with their professional judgment upon assessment of his condition.

In light of the foregoing, defendant Cummins can be held liable for decisions of medical personnel only if his actions bear a causal relationship to the purported violation of Edwards' constitutional rights. To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendant Cummins, Edwards must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so . . . ." or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [Cummins] directed the [facility's health care staff] to act unlawfully, or knew that [the staff] would act

10

unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).   A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Edwards has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that Cummins directed medical personnel to act unlawfully or knew that they would act/acted unlawfully and failed to stop such action.   In addition, Edwards has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Cummins failed to take corrective action; instead, the undisputed medical records indicate that Edwards had continuous access to medical personnel and received treatment for his condition.   Finally, the undisputed evidentiary materials submitted by the defendants demonstrate that the challenged course of medical treatment did not occur pursuant to a policy enacted by Cummins.   Thus, the requisite causal connection does not exist in this case and liability under the custom or policy standard is not warranted.   *Cf. Employment Div. v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).   Summary judgment is therefore due to be granted in favor of defendant Cummins.

### C.  The Medical Defendants

Edwards asserts that during a previous incarceration at Kilby in 2010, medical personnel provided inadequate treatment for a degenerative spinal condition which he alleges worsened after an altercation with another inmate on January 12, 2010.   *Complaint - Doc.*

11

*No. 1* at 2-3.  Specifically, Edwards argues that Dr. Robbins should have ordered an MRI to determine whether the altercation caused additional damage to his spine.  *Id*. at 3.  The medical defendants adamantly deny they acted with deliberate indifference to Edwards' medical needs and, instead, maintain that Edwards received appropriate treatment for his condition.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).  Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference is well settled.  *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995).  Instead, something more must be shown.  Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless.

> *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n.28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to properly establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show:  (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).  When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that

13

a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511

U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have

actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known

risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an

official's failure to alleviate a significant risk that he should have perceived but did not,

while no cause for commendation, cannot under our cases be condemned as the infliction of

punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate
> indifference, . . . the Supreme Court has . . . emphasized that not 'every claim
> by a prisoner that he has not received adequate medical treatment states a
> violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291;
> *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment
> only when it is 'so grossly incompetent, inadequate, or excessive as to shock
> the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d
> at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not
> rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106, 97
> S.Ct. at 292 ('Medical malpractice does not become a constitutional violation
> merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere
> negligence or medical malpractice 'not sufficient' to constitute deliberate
> indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not
> constitute deliberate indifference).  Nor does a simple difference in medical
> opinion between the prison's medical staff and the inmate as to the latter's
> diagnosis or course of treatment support a claim of cruel and unusual
> punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551
> F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation

and internal quotations omitted) (To show deliberate indifference to a serious medical need,

a plaintiff must demonstrate that [the] defendants' response to the need was more than

"merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

The affidavits filed by the medical defendants address the allegations made by Edwards. A thorough review of the evidentiary materials filed in this case demonstrates that these affidavits are corroborated by the objective medical records compiled contemporaneously with treatment provided to Edwards with respect to the instant claim of deliberate indifference. Dr. Robbins addresses Edwards' claims, in pertinent part, as follows:

15

I have completely reviewed the medical file regarding the medical treatment of Richard W. Edwards (AIS #135518), during the time of his incarceration with the Alabama Department of Corrections. I am familiar with the health care provided to Mr. Edwards during his incarceration and have personally treated Mr. Edwards at the Kilby Correctional Facility.

* * *

On September 29, 2008, Mr. Edwards underwent surgery at the C3-4 level. Mr. Edwards had good results for approximately 8-9 months. Thereafter, he began to complain of pain in his neck, shoulders and back.

On April 1, 2009, after Mr. Edwards complained of pain, a radiographic examination was performed by American Mobile Imaging. The Diagnostic Imaging Report stated as follows: "Results: alignment is satisfactory and disc spaces are maintained. Conclusion: Normal."

Another radiographic examination was performed on Richard Edwards on July 8, 2009. The examination was again performed due to complaints of pain in the thorasic spine. The conclusions as noted by the radiologist were: "Alignment is satisfactory with minor generalized DJD [degenerative joint disease] and osteopenia [a decrease in bone density] is present."

An MRI of Richard Edwards' cervical spine was taken on October 22, 2009, at Jackson Hospital In Montgomery, Alabama. A comparison was made to an earlier MRI taken in July [of] 2008. The report from the radiologist, dated October 22, 2009, stated as follows:

Findings:

Patient has undergone an anterior cervical fusion at C3-4 with metal plates in place at this level. A large disc bulge at C3-4 seen previously is no longer identified. There is focal atrophy of the cord at C3-4, and there is a focus of increased signal in the cord in the atrophic segment. This suggests myelomalacia [which entails softening of the spinal cord]. This finding is similar to that seen on the previous exam. There is a disc bulge and osteophyte complex at C4-5 and C5-6 that is similar to prior study. Bulge is more prominent at C5-6, with some ventral encroachment on the cord. Narrowing of the canal is again seen at C4-5 and C5-6 with slight flattening of the cord at these two levels. There is some encroachment on the left neural foramina due to degenerative bone changes at C4-5 and a mild narrowing of both foramina at C5-6. I do not see a significant bulge at C6-7 on today's study. At C2-3, there is some narrowing of the right neural foramina due to degenerative bone changes. This

16

is also similar to prior [study].

Conclusion:

Patient has undergone an anterior cervical fusion with metal plate at C3-4.  Improving encroachment on the canal at this level seen on prior studies.  There is focal atrophy at the cord, and a focus of myelomalacia in the cord at C3-4 that is similar to prior study.

Disc bulge and osteophyte complex at C4-5 and C5-6 results in mild spinal stenosis.  There is also foraminal narrowing on the left at C4-5.

Little change in foraminal narrowing on the right at C2-3.

Another radiographic study was performed on March 15, 2010.  The radiographic study was again taken due to Mr. Edwards continued complaints of pain in the lumbar spine.  The results of the radiographic study stated: "Results: There is anatomic alignment of lumbar vertebra.  The vertebral bodies show mild degenerative osteophytic spurring.  No fracture or subluxation is seen, however.  Conclusion: mild osteoarthritis at the lumbar spine.  The findings are new since 4/1/09."

On January 21, 2010, Mr. Richard Edwards was seen by Dr. Francavilla, an outside neurologist at Brookwood Hospital in Birmingham, Alabama.  Dr. Francavilla's notes from January 21, 2010, reference the fusion that Mr. Edwards underwent on September 29, 2008.  Dr. Francavilla's notes indicated that Mr. Edwards had good results for about eight to nine months, then began to have recurrent pain in his neck and shoulders.  Mr. Edwards denied weakness or gait disturbance.  Dr. Francavilla further referenced the MRI taken of Mr. Edwards on October 22, 2009.  The MRI indicated an advancement of stenosis at C5-6.  However, Dr. Francavilla noted no deficit on exam, and no evidence of lumbar radiculopathy.  Dr. Francavilla's notes [did not contain an order for an additional MRI and] indicated that he agreed with the current treatment being provided to Mr. Edwards.

On January 25, 2010, Mr. Edwards was seen in the out-patient clinic as a follow-up to his off-site appointment.  On February 2, 2010, Mr. Edwards was again seen and evaluated and given medication.

On March 12, 2010, Mr. Edwards was seen again and an x-ray was ordered.  On April 5, 2010, Mr. Edwards was seen again and the results of his x-rays were discussed with him.

On April 8, 2010, Mr. Edwards placed a sick call slip, and he was instructed to continue on his current medications as ordered.

Mr. Edwards has been seen multiple times by physicians and medical

staff, sent off-site for a neurology consult, been provided with diagnostic testing, and placed on medications for his current condition.

Mr. Edwards has never been denied medical care or treatment.  Mr. Edwards has always been seen and treated for his medical conditions.  Mr. Edwards has never been refused medical care and his medical care has never been delayed.

* * *

Mr. Edwards is currently being provided medications for his pain.  His medical needs are monitored by me and the medical staff at the correctional facility.  Mr. Edwards has never been denied any medications prescribed to him by me.

* * *

At no time has anybody refused to see, treat or care for Mr. Edwards during the time of his incarceration.  Mr. Edwards has been seen by multiple outside specialists due to his medical needs.

*Exhibit A to the Special Report of the Medical Defendants (Aff. of Dr. Michael Robbins) - Doc. No. 21-1 at 2-7.*

Under the circumstances of this case, the court concludes that the course of treatment undertaken by the medical defendants in addressing Edwards' complaints regarding his spinal condition did not violate his constitutional rights.  After the altercation on January 12, 2010, correctional officials immediately transported Edwards to the health care unit for treatment.  At this time, Edwards advised the attending nurse that he "scratched his head on the floor." *Exhibit C to the Special Report of the Medical Defendants (Medical Records of Richard W. Edwards) - Doc. No.  21-3* at 40.  Edwards made no complaints regarding any injury to his back or spine.  The following day, Edwards submitted a medical services request form seeking renewal of his pain medication.  *Id*. at 45.  Again, he did not relate the pain in his back to any injury suffered in the previous day's altercation but merely referenced his

18

prior degenerative condition.  *Id*.  Based on this request, a nurse examined Edwards in the health care unit.  *Id*. at 47.

On January 21, 2010, Edwards was referred to Dr. Thomas Francavilla, a free-world neurologist, for evaluation.   John Denney, a Physician Assistant employed by Dr. Francavella, examined Edwards and evaluated his condition.  *Id*. at 81.  Based on the examination conducted by his assistant, Dr. Francavilla determined that the "old cord injury [was] probably responsible for symptoms" suffered by Edwards and recommended continuation of the current treatment plan.  *Id*. at 78.  Dr. Francavilla made no mention of surgery or the need for an additional MRI.

The undisputed medical records further demonstrate that correctional medical personnel examined Edwards each time he submitted a sick call request regarding his spinal condition,  prescribed various medication, including nonsteroidal anti-inflammatory drugs and narcotic pain relievers, in an effort to alleviate the swelling and pain associated with his condition, referred Edwards to a neurological specialist for evaluation, ordered radiological tests and provided continuous access to health care providers in an effort to monitor his condition.  Based on the findings received from Dr. Francavilla, Dr. Robbins, in accordance with his medical experience and professional judgment, did not deem it necessary to order an additional MRI of Edwards' spine.  The medical care Edwards received was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505.  The allegations presented

19

by Edwards simply fail to establish deliberate indifference by the medical defendants. *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-1546 (Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability.  In addition, the inmate's allegation that his prison physician did not diligently pursue alternative means of treating condition "did not 'rise beyond negligence' . . . to the level of deliberate indifference."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

It is undisputed that Edwards received continuous medical care for his condition.  It is likewise evident that Dr. Robbins rendered treatment to Edwards in accordance with his professional judgment.  Although Edwards argues the medical defendants should have referred him for an additional MRI, well settled law directs that Edwards' mere desire for use of an   "additional diagnostic technique . . . 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."  *Adams*, 61 F.3d at 1545.  In addition, Edwards has failed to present any evidence which indicates that the medical defendants knew that the manner in which they

provided treatment created a substantial risk to Edwards' health and that with this knowledge consciously disregarded such risk.  The record is therefore devoid of evidence, significantly probative or otherwise, showing that the medical defendants acted with deliberate indifference to Edwards' medical needs.  Consequently, summary judgment is due to be granted in favor of Correctional Medical Services, Dr. Michael Robbins and Valencia Lockhart.  *Carter*, 352 F.3d at 1350.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motions for summary judgment be GRANTED;

2. Judgment be GRANTED in favor of the defendants;

3. This case be dismissed with prejudice; and

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before **May 28, 2013**, the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the

District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 14th day of May, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE